**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| EDGAR NEWBERG, | Civil No. 08-4681 (JRT/JJG) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |
| MICHAEL SCHWEISS and SCHWEISS DISTRIBUTING, INC., | |
| Defendants. | |

David T. Schultz and Nicole E. Narotzky, **MASLON EDELMAN BORMAN & BRAND, LLP**, 90 South Seventh Street, Suite 3300, Minneapolis, MN 55402, for plaintiff.

Dean C. Eyler and Joy Reopelle Anderson, **GRAY PLANT MOOTY MOOTY & BENNETT, PA**, 80 South Eighth Street, Suite 500, Minneapolis, MN 55402, for defendants.

On July 11, 2008, plaintiff Edgar Newberg filed an action against defendants Michael Schweiss ("Schweiss") and Schweiss Distributing, Inc. ("Schweiss Distributing") (collectively, "defendants") seeking correction of inventorship of two patents issued to Schweiss Distributing, and bringing claims for promissory estoppel, unjust enrichment, and fraudulent nondisclosure. The case is before the Court on defendants' motions to dismiss the claims against both defendants for promissory estoppel, unjust enrichment, and fraudulent nondisclosure for failure to state a claim, and to dismiss Schweiss from the case entirely. For the reasons discussed below, defendants' motions are granted in part and denied in part.

**BACKGROUND**

Newberg is a resident of Hector, Minnesota, where he manages the Hector Airport. Schweiss, who owns Schweiss Distributing, and Newberg are friends and have known each other since childhood. Schweiss Distributing manufactures and sells bi-fold doors that are used in airplane hangars.

In August 1998, while repairing a door at his aircraft hangar, Newberg invented a new lifting mechanism for bi-fold doors, which are used to open and close the entrance to airplane hangars. Newberg's invention replaced lift cables, which were previously used in all bi-fold doors, with nylon straps. Newberg believed that the nylon lift straps would be safer and more durable then cable straps, and would make the bi-fold doors function better. In addition to replacing the cables with nylon straps, Newberg made other improvements to the bi-fold doors.

Shortly thereafter, Schweiss came to the aircraft hangar to look at the new invention. Schweiss was impressed with the invention, and returned to the hangar several times in the ensuing month to re-examine it. On one visit, Schweiss returned with a fellow Schweiss Distributing employee. Schweiss eventually asked Newberg if he could use the idea. According to the complaint, "Schweiss promised . . . that if he was allowed to use the lift strap invention system, he would compensate Newberg for the invention." (Compl., Docket No. 1, ¶ 18.) As a result of this promise, and with the expectation of compensation, Newberg agreed that Schweiss could use the new lift strap system invention. Further, "Schweiss publicly stated that if Newberg's bi-fold door with the lift

strap system [took] off, he would make it worth Newberg's while," and Schweiss reaffirmed his promise to compensate Newberg over the following years.[1] (*Id.*, ¶¶ 19-20.)

On May 19, 1999, Schweiss filed patent application number 09/314,529 for a Bi-fold Door Lift apparatus, listing himself as the sole inventor. That patent was issued on March 13, 2001, as the '617 patent and was assigned to Schweiss Distributing. On February 20, 2001, Schweiss filed patent application number 09/783,960 for a Method and Apparatus of Opening and Closing a Bi-fold Door, again listing himself as the sole inventor. That patent was issued as the '080 patent on March 15, 2005, and assigned to Schweiss Distributing.

Newberg alleges that the commercial embodiment of the patented bi-fold doors using Newberg's invention have been extremely successful for Schweiss Distributing, generating more than $10 million in revenues (or about 80% of Schweiss Distributing's business) in 2007. Newberg alleges, however, that Schweiss has failed to compensate Newberg for use of the invention as promised.

On July 11, 2008, Newberg brought this action seeking correction of inventorship of the '617 and '080 patents and alleging promissory estoppel, unjust enrichment, and

---

[1] Plaintiffs submitted a declaration from Newberg with their opposition briefs documenting specific statements by Schweiss not alleged in the complaint. In that declaration, Newberg contends that, *inter alia*, in September 2005, Schweiss told Newberg "Don't worry [the compensation is] coming." (Newberg Decl., Docket No. 11, ¶ 3.) Because the declaration is not necessarily embraced by the complaint, however, the Court declines to consider it in deciding the instant motion to dismiss. *See Porous Media Corp. v. Pall Corp.,* 186 F.3d 1077, 1079 (8th Cir. 1999).

fraudulent nondisclosure against Schweiss individually and Schweiss Distributing. Defendants now move to dismiss the three state law counts, arguing that Newberg is time-barred by the statute of limitations from asserting those claims and, regardless, that Newberg failed to state a claim for promissory estoppel, unjust enrichment, or fraudulent nondisclosure.

## DISCUSSION

### I.    STANDARD OF REVIEW

In reviewing a complaint under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way Employees v. Burlington N. Santa Fe R.R.,* 270 F.3d 637, 638 (8th Cir. 2001). A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). That is, a plaintiff must state "a claim to relief that is plausible on its face." *Id.* at 570.

### II.    MOTION TO DISMISS

#### A.    Promissory Estoppel

Newberg contends that he is entitled to recover damages under a promissory estoppel theory. In particular, Newberg alleges that Schweiss promised to compensate him for his invention and it was reasonably foreseeable that Newberg would rely on that proposition; Newberg relied to his detriment on that promise by foregoing other business options; defendants have profited from the invention and have failed to compensate

Newberg; and the promise must therefore be enforced to prevent injustice.  (Compl.,

Docket No. 1, ¶¶ 46-52.)

### 1.    Merits

To establish a claim for promissory estoppel, a plaintiff must prove that "1) a clear

and definite promise was made, 2) the promisor intended to induce reliance and the

promisee in fact relied to his or her detriment, and 3) the promise must be enforced to

prevent injustice." *Martens v. Minn. Mining & Mfg. Co.,* 616 N.W.2d 732, 746 (Minn.

2000).  The first element requires that "the promisor should reasonably expect to induce

action or forbearance on the part of the promise." *Id.*

Newberg alleges three instances in which Schweiss promised to compensate

Newberg for his invention:

18.   Schweiss promised . . . that if he was allowed to use the lift strap system invention, he would compensate Newberg for the invention.

19.   In fact, Schweiss publicly stated that if Newberg's bi-fold door with the lift strap system takes off, he would make it worth Newberg's while.

20.   Throughout the years, Schweiss reaffirmed his promise to compensate Newberg for his invention.

(Compl., Docket No. 1, ¶¶ 18-20.)

Defendants argue that Newberg has failed to allege any statement by defendants

that could be considered a clear and definite promise to compensate Newberg for use of

the lift strap system.  That is, defendants argue that Newberg's allegations of a promise

"do not have any terms, let alone terms that are specific enough to be enforceable." (Def.'s Mem. in Supp. of Mot. to Dismiss, Docket No. 7, at 19.)

A party, however, need not specify the precise terms of a promise in order to survive a motion to dismiss for failure to state a claim.[2]   Indeed, in *Muller Family Theatres v. McMenomy*, an unpublished case cited by defendants, the Minnesota appellate court granted a defendant's motion for summary judgment on a promissory estoppel claim because the plaintiff "could not describe a specific **promise**, and the record does not show a **promise**." *Muller Family Theatres v. McMenomy*, No. C3-97-2091, 1998 Minn. App. LEXIS 909 at *6 (Minn. Ct. App. Aug. 11, 1998) (emphasis added).  Further, the Court is unpersuaded by the other cases cited by defendants; those cases are inapposite in that they address promissory estoppel claims that were dismissed because the promises had to be inferred from ambiguous statements by the promisor. *See, e.g.*, *Fenton v. Fenton*, 678 N.Y.S.2d 358, 359 (N.Y. App. Div. 1998) ("[T]he father's alleged promise, based upon his purported statement that [the mother] should let him know the cost of the wedding, is too ambiguous to convey the understanding that the father would reimburse the mother for any expenses she incurred for the wedding, and it was unreasonable for her to rely upon such a representation."); *Ruud v. Great Plains Supply, Inc.*, 526 N.W.2d 369, 370, 372 (Minn. 1995) (holding that statements that "good

---

[2] One Minnesota appellate court has noted, however, that in the employment context, "[w]here the promise of employment is indefinite in its terms, an employee's reliance becomes less reasonable and injustice less likely." *Hecht v. Interstate Power Co.*, No. CA-01-1141, 2002 WL 484992, at *4 (Minn. Ct. App. Apr. 2, 2002).

employees are taken care of" and "you are considered a good employee" were insufficient to establish a clear and definite promise to modify an employment contract).

Here, by contrast, Newberg alleged that Schweiss specifically promised that he would compensate Newberg for use of the bi-fold door idea. (*See* Compl., Docket No. 1, ¶ 18 ("Schweiss promised . . . that if he was allowed to use the lift strap system invention, he would compensate Newberg for the invention.").) Under those circumstances, Newberg's allegations are sufficient to state a clear and definite promise for the purposes of Rule 12(b)(6). Although the Court is not convinced that the allegation that Schweiss "would make it worth Newberg's while" would be sufficient, by itself, to survive a motion to dismiss, the other allegations in the complaint are adequate. In addition, Newberg alleged that he had foregone other business opportunities in reliance on Schweiss' promise, satisfying the reliance element under Minnesota law. Thus, the Court finds that Newberg has adequately stated a claim for promissory estoppel and turns to defendants' contention that such a claim is time-barred.

### 2.      Statute of Limitations

Defendants argue that Newberg's promissory estoppel claim is barred by Minnesota's statute of limitations. Under Minnesota law, promissory estoppel is subject to a six-year statute of limitations. Minn. Stat. § 541.05, subd. 1(6); *Jacobson v. Bd. of Trs. of the Teacher's Ret. Ass'n.*, 627 N.W.2d 106, 110 (Minn. Ct. App. 2001). The statute of limitations begins to run when "the cause of action accrues." Minn. Stat. § 541.01.

"A cause of action accrues at the time when an action thereon can be commenced." *Pettibone v. Cook Cty.*, 120 F.2d 850, 854 (8th Cir. 1941); *see also Peggy Rose Revocable Trust v. Eppich*, 640 N.W.2d 601, 609 (Minn. 2002) (holding that a cause of action accrues at the point when the action "can be brought without being subject to dismissal for failure to state [all elements of the] claim").

Defendants argue that if Schweiss made an enforceable promise to compensate Newberg, "it would have been breached at the time Schweiss Distributing began using the lift strap system without paying Newberg." (Def.'s Mem. in Supp. of Mot. to Dismiss, Docket No. 7, at 10.) As a consequence, defendants contend that the promise must have been breached before October 2, 2002 (defendants were served with the complaint on October 2, 2008), because that date is four years after the promise was made, three years after Schweiss applied for a patent, and one-and-a-half years after Schweiss Distributing received a patent. Newberg responds, however, that "the question is not when is the earliest moment at which Defendants might have chosen to begin to fulfill their promise, but rather when should Mr. Newberg have concluded that the promise was broken." (Pl.'s Mem. in Opp'n to Mot. to Dismiss, Docket No. 9, at 14.)

Although a promissory estoppel claim accrues when the breach of the promise occurs, *see Jacobson*, 627 N.W.2d at 110, it is not clear from the face of the complaint that Schweiss' failure to compensate Newberg **must have** occurred before October 2, 2002. The Court disagrees with defendants that events in the process of preparing the bi-fold doors for market or patent application activities are conclusive as to when Schweiss breached his promise to compensate Newberg. In addition, although Schweiss

Distributing's sales of the bi-fold door product suggest that compensation **could** be paid, and although Newberg had yet to be compensated, these facts do not necessarily lead to the conclusion that Schweiss had decided not to compensate Newberg.

In sum, the question of when Schweiss' promise was breached is a fact question that must be resolved after discovery.  Thus, the Court cannot conclude from the face of the complaint that Newberg's promissory estoppel claim is time-barred.[3]  Accordingly, defendants' motion to dismiss Newberg's promissory estoppel claim is denied.

### B.    Unjust Enrichment

Newberg also alleges that defendants were unjustly enriched by failing to compensate Newberg for use of the lift strap system.

To establish a claim for unjust enrichment, a plaintiff must demonstrate "that another party knowingly received something of value to which he was not entitled, and that the circumstances are such that it would be unjust for that person to retain the benefit."  *Schumacher v. Schumacher*, 627 N.W.2d 725, 729 (Minn. Ct. App. 2001). "[T]o ensure that unjust enrichment is not used to reward a bad bargain, Minnesota courts require proof that 'a benefit was conferred unknowingly or unwillingly.'"  *Holmes v. Torguson*, 41 F.3d 1251, 1256 (8th Cir. 1994) (quoting *Galante v. Oz, Inc.*, 379 N.W.2d

---

[3] Because the Court finds that it is not clear from the complaint that the promissory estoppel claims are time-barred, and because the Court concludes that Newberg has not properly stated claims for unjust enrichment or fraudulent nondisclosure, as discussed *infra*, the Court does not reach the parties' arguments regarding equitable tolling or equitable estoppel. Depending on the evidence produced during discovery, the Court would be willing to entertain similar arguments at a later stage in this litigation.

723, 726 (Minn. Ct. App. 1986)).  Further, the benefit must be obtained unjustly, in the sense of illegally or unlawfully, or in situations in which it would be morally wrong for one party to be enriched at the expense of another.  *Midwest Sports Mktg., Inc. v. Hillerich & Bradsby of Can.*, 552 N.W.2d 254, 269 (Minn. Ct. App. 1996); *see also Cady v. Bush*, 166 N.W.2d 358, 362 (Minn. 1969).

Defendants argue that Newberg did not allege that he unknowingly or unwillingly conferred a benefit on defendants.  Indeed, Newberg alleges that he "agreed that Schweiss could use his new lift strap system invention."  (Compl., Docket No. 1, ¶ 21.) Newberg argues, however, that the pertinent question is whether he "conferred a benefit upon the Defendant in circumstances where the willingness to confer that benefit occurred because the Plaintiff was unaware of the true circumstances."  (Pl.'s Mem. in Opp'n to Mot. to Dismiss, Docket No. 9, at 24.)  The Court disagrees.  Under the allegations in the complaint, there is no question that Newberg voluntarily and knowingly conferred the right to use the lift strap system invention to defendants with the expectation that he would eventually be compensated if the project "took off."  Further, the issue of whether Newberg eventually received the benefit of the claimed bargain is appropriately addressed in Newberg's claim for promissory estoppel.

Newberg further alleges that defendants were unjustly enriched by failing to disclose Newberg as an inventor on the patent applications.  It is unclear from the complaint, however, that defendants were enriched at all by that failure.  Newberg asserts in his opposition brief that as a result of his reliance on defendants' promise to compensate Newberg, he did not publicize his invention or try to commercialize it.  That

assertion fails to plead unjust-gains for two reasons.  First, it is questionable what bearing

such an allegation would have on establishing "unjust **gains**" for defendants; Newberg's

assertion only alleges that he was deprived of opportunities.  Second, as noted above,

Newberg has not pled that he unwillingly or unknowingly conferred a benefit on

defendants.  Accordingly, Newberg's claims for unjust enrichment must be dismissed.

Because the Court concludes here that Newberg fails to state a claim for unjust

enrichment, it need not address whether the statute of limitations bars that claim.

### C.      Fraudulent Misrepresentation

Finally, Newberg alleges Schweiss defrauded him by concealing from Newberg

both the patent applications and Schweiss' duty to disclose Newberg as an inventor of the

'617 and '080 patents.   To establish fraud under Minnesota law, a plaintiff must

demonstrate that

> [the] defendant (1) made a representation (2) that was false (3) having to do
> with a past or present fact (4) that is material (5) and susceptible of
> knowledge (6) that the representor knows to be false or is asserted without
> knowing whether the fact is true or false (7) with the intent to induce the
> other person to act (8) and the person in fact is induced to act (9) in reliance
> on the representation [and] (10) that the **plaintiff suffered damages**
> (11) attributable to the misrepresentation.

*Heidbreder v. Carton*, 645 N.W.2d 355, 367 (Minn. 2002) (emphasis added).

"A misrepresentation may be made by an affirmative statement that is itself false

or by concealing or not disclosing certain facts that render facts disclosed misleading."

*Id.* To establish a claim for fraudulent nondisclosure, the plaintiff must demonstrate that

the defendant had "a legal or equitable obligation to communicate facts to a particular

person and that person is entitled to the information." *Id.* (quoting *L & H Airco, Inc. v. Rapistan Corp.,* 446 N.W.2d 372, 380 (Minn. 1989)). "A duty to disclose facts may exist when a fiduciary relationship exists between the parties or when disclosure would be necessary to clarify information already disclosed." *Id.*

Defendants contend that Newberg has not alleged that there was a fiduciary relationship between him and Schweiss or that Schweiss failed to disclose information that was necessary to prevent already-disclosed information from being misleading. First, Newberg's complaint does not plead that Schweiss had a legal or equitable obligation to Newberg (1) to communicate facts about the patent applications or (2) to inform Newberg of the duty to disclose all inventors to the United States Patent and Trademark Office ("USPTO"). Instead, Newberg's complaint appears to allege that Schweiss' duty to disclose all inventors to the USPTO under 35 U.S.C. § 115 created a derivative duty to disclose to Newberg the facts about the patent applications and Schweiss' duty to disclose Newberg as a co-inventor of the '617 and '080 patents. (Compl., Docket No. 1, ¶¶ 54-56.)

Under 35 U.S.C. § 115, a patent applicant is required to take an oath that "he believes himself to be the original and first inventor" of the subject matter of the patent. The duty to disclose all inventors, however, is a duty owed to the USPTO, not to potential co-inventors. *Wise v. Hubbard*, 769 F.2d 1, 3 (1st Cir. 1985) ("[35 U.S.C. § 115] creates no duty between the patent applicant and the purported inventor. Instead, because the [USPTO's] interest is in rewarding the true inventor with the issuance of a letter patent, the sole duty created is between the applicant and the [USPTO].") Indeed,

breach of that statutory duty merely results in the patent being "unauthorized by law and void." *Id.*   Thus, even assuming that Newberg is a co-inventor of the '617 and '080 patents, the federal statute does not establish a legal or equitable obligation on the part of Schweiss to **Newberg** to disclose the facts about the patent applications or to disclose Newberg as an inventor.

Notably, Newberg does not allege that defendants concealed information about the patent applications.   That is, Newberg does not plead that Schweiss ever responded to an inquiry about the patent applications by stating that he would not or did not apply for the '617 and '080 patents.   *See Wise v. Hubbard*, 769 F.2d 1, 3 (1st Cir. 1985) ("If plaintiff had inquired of Hubbard what he had done with the models and drawings of the tractor feed mechanisms given him by plaintiff and Hubbard had said 'nothing,' or words to that effect, this might have constituted a positive act of concealment. But there was no inquiry.").   Further, the Court cannot conclude from the complaint, absent any specific allegation of concealment, that there was any positive act of concealment of the patent applications because the recording of the '617 and '080 patents constitutes "[c]onstructive notice . . . to all the world." *Sontag Chain Stores Co. Ltd. v. Nat'l Nut Co. of Ca.*, 310 U.S. 281, 295 (1940).

Finally, Newberg fails to adequately allege that any nondisclosure caused him damage.   Newberg alleges only that "[a]s a result of Schweiss' fraudulent nondisclosure, Newberg has been injured and damaged and is entitled to monetary relief in an amount to be determined at trial."   (Compl., Docket No. 1, ¶ 59.)   Under the Supreme Court's guidance in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), Newberg's

complaint must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Newberg's allegations, however, represent little more than a formulaic recitation of damages.  There is no indication of how Schweiss has been damaged by any of Schweiss' alleged nondisclosures, and the law is clear that even assuming that Schweiss had a duty to disclose Newberg as a co-inventor to the USPTO, Newberg would not automatically be entitled to a share of proceeds from the sales of the invention.  *See* 35 U.S.C. § 262 ("In the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention . . . without the consent of and without accounting to the other owners.").

Accordingly, dismissal of Newberg's fraudulent nondisclosure claims for failure to state a claim is appropriate, and the Court need not reach the question of whether those claims are time-barred.

## III.    MOTION TO DISMISS MICHAEL SCHWEISS AS AN INDIVIDUAL DEFENDANT

Defendants also move to dismiss the state law claims against individual defendant Michael Schweiss, arguing that Schweiss was acting in his capacity as an agent of Schweiss Distributing, not as an individual, when Schweiss allegedly made the promise to Newberg.  Because the Court dismisses the unjust enrichment and fraudulent nondisclosure claims, it only considers Schweiss' agency role in the claim for promissory estoppel.

A person making or purporting to make a contract with another as an agent for a disclosed principal does not become a party to the contract. *Kost v. Peterson*, 193 N.W.2d 291, 294 (Minn. 1971). When an agent, however, acts for a partially disclosed principal or on his own for an undisclosed principal, the agent is a party to the agreement and is liable on the contract. *Paynesville Farmers Union Oil Co., v. Ever Ready Oil Co., Inc.*, 379 N.W.2d 186, 188 (Minn. Ct. App. 1985). Although Newberg does not allege that a contract between him and Schweiss was created, the Court considers the question of Schweiss' agency in making a promise to Newberg under *Kost* and *Ever Ready Oil*. *See Aberman v. Malden Mills Indus., Inc.*, 414 N.W.2d 769, 773 (Minn. 1987) (affirming summary judgment in favor of defendants on sufficiency-of-the-evidence and agency grounds for contract and promissory estoppel claims).

Given the nature of Newberg's personal relationship with Schweiss, it seems reasonable that Newberg felt that he would be dealing with Schweiss individually when Schweiss promised to compensate Newberg for the invention. Indeed, Newberg alleges that he and Schweiss were friends at the time and had known each other since childhood. Although the complaint alleges that Schweiss owned Schweiss Distributing, that the company manufactures and sells bi-fold doors, and that Schweiss had brought another employee from Schweiss Distributing to inspect the door, in drawing all inferences in favor of Newberg, the Court cannot conclude as a matter of law that Schweiss Distributing was a disclosed principal for which Schweiss was acting as an agent. Notably, case law places on the **agent** the burden of disclosing that he is acting on behalf of a principal. *Orient Mid-East Lines v. Albert E. Bowen, Inc.*, 458 F.2d 572, 576 (2d

Cir. 1972) ("The agent must disclose his principal at or before the time when the contractual agreement is made final."). Here, there is no allegation by Newberg or contention by defendants that Schweiss made such a representation. Accordingly, the Court denies defendants' motion to dismiss Schweiss from the case regarding the remaining state law claim for promissory estoppel.[4]

## ORDER

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that defendants' Motion to Dismiss [Docket No. 5] is **GRANTED in part** and **DENIED in part** as follows:

a.      Defendants' motion is **GRANTED** as to Newberg's claims for unjust enrichment and fraudulent misrepresentation. Accordingly, Counts III and V of the Complaint are **DISMISSED without prejudice**.

b.      Defendants' motion is **DENIED** in all other respects.


DATED:  September 30, 2009            _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                              United States District Judge

---

[4] Defendants further assert that if the Court grants the motion to dismiss, it should also dismiss Schweiss for the purposes of Counts I and II for correction of inventorship. Because the Court has not dismissed the claims for promissory estoppel, it does not address Schweiss' individual role in Counts I and II here.